WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Villalobos Organista,<br>Petitioner,<br>v.<br>Jefferson B Sessions, III, et al.,<br>Respondents. | No. CV-18-00285-PHX-GMS (MHB)<br>**ORDER** |

Before the Court is Petitioner Carlos Villalobos Organista's Motion for Preliminary Injunction (Doc. 3). The Court heard oral argument on the motion on February 8, 2018. After consideration of the parties' briefs and their argument, the Court denies the Motion. Further, pursuant to Rule 65(a)(2), because the Petition presents a legal question that is fully briefed through the motion for injunctive relief, this Order operates as an adjudication on the merits of the Petition.

**I.  Background**

Petitioner is a native and citizen of Mexico. On July 5, 2016, Petitioner entered the United States at the Nogales, Arizona port of entry as a nonimmigrant visa holder. Petitioner's authorized period of stay expired on January 4, 2017. On April 4, 2017, Petitioner was taken into the custody of the United States Immigration and Customs Enforcement (Doc. 1 at 6). Petitioner has applied for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id*. at 3.)

On November 22, 2017, Petitioner was afforded a custody redetermination hearing before an Immigration Judge (IJ). The IJ granted Petitioner release upon payment of a bond of $20,000. (*Id.* at 6.) Petitioner's family attempted to post bond but was prevented from doing so because the Department of Homeland Security (DHS) invoked the automatic stay provision of 8 C.F.R. § 1003.19(i)(2), which allows the government to stay an IJ's order of release on bond where DHS initially determined the alien should not be released and where the IJ later ordered a bond of $10,000 or more. (*Id.*)

Petitioner filed his first Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on December 20, 2017, challenging the automatic stay. The Court granted a preliminary injunction and directed the government to release Petitioner in accordance with IJ Phelps's decision and order dated November 22, 2017. The government complied and Petitioner was released from custody on December 28, 2017. That same day, the government sought a discretionary stay from the BIA under § 1003.19(i)(1), and it was granted on December 29, 2017. Petitioner was redetained and he remains in custody.

## II. Motion for Preliminary Injunction

### A. Standard

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-130 (2d ed. 1995)). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit's "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*.

*Alliance for the Wild Rockies v. Cottrell* 632 F. 3d 1127, 1134 (9th Cir. 2011). Under that test, a preliminary injunction is appropriate when a plaintiff demonstrates that "'serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Id.* at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). The movant must also satisfy the other two *Winter* factors—likelihood of irreparable harm and that an injunction is in the public interest. *Id.* With respect to the irreparable harm prong, *Winter* specifically rejected the Ninth Circuit's "possibility of irreparable injury" standard. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Under *Winter*, a party seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The Court explained that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

### B. Likelihood of Success on the Merits

Petitioner remains detained under 8 U.S.C. § 1226(a). His now nine month detention has thus been prolonged as that term is defined by the precedents in this Circuit and in the United States Supreme Court. In November 2017, Petitioner sought and received a custody redetermination hearing before an IJ pursuant to *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060, 1087 (9th Cir. 2015), which requires that after an individual has been detained under 8 U.S.C. § 1226(a) for more than six months, the government must produce "clear and convincing evidence that the non-citizen is a flight risk or a danger to the community." *Id*. Further, after a detention has become prolonged, continuing detention determinations must be made by a neutral decsionmaker. *Rodriguez III,* 804 F.3d at 1069 (quoting *Diouf v. Napolitano* (*Diouf II*), 634 F.3d 1081, 1091-92 (9th Cir. 2011)). At Petitioner's hearing, the IJ heard the evidence, and set bond at $20,000, but the government invoked an automatic stay of that decision pending appeal to the BIA. The constitutional defect addressed in Petitioner's first § 2241 Petition was

that the government's invocation of an automatic stay of the IJ's bond determination deprived Petitioner of a hearing before a neutral decisionmaker. As a result, in its Order on Petitioner's motion for preliminary injunction, the Court noted the existence of § 1003.19(i)(1), pursuant to which the government could seek a discretionary stay from the BIA—a neutral decisionmaker—of the IJ's bond determination (2:17cv4719, Doc. 13 at 5).

The government sought and received that discretionary stay. The problem Petitioner alleges in the instant petition, is that he did not receive notice and an opportunity to be heard prior to the request for emergency stay being granted. Thus, in this case, the Court must answer a different question: whether the BIA's ex parte issuance of a discretionary stay pursuant to § 1003.19(i)(1) violates due process. The Court notes the dearth of authority on this provision and observes that the only case to evaluate a due process challenge to the discretionary stay provision involves a situation where the petitioner *was* given the opportunity to be heard; as a result, the court determined that due process was not offended. *See, e.g., El-Dessouki v. Cangemi*, 2006 WL 2727191, at *2 (D. Minn. Sept. 22, 2006).

As a general matter, the Court must evaluate the discretionary stay process under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). The factors are: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id.* "By weighing these concerns, courts can determine whether a State has met the fundamental requirement of due process—the opportunity to be heard at a meaningful time and in a meaningful manner." *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (internal quotations omitted).

With respect to the first factor, there is no meaningful dispute that Petitioner has a

liberty interest in being heard before the BIA can prolong his detention.

As for the second factor, the risk of an erroneous deprivation, the record is clear that there are no formal procedures that establish the framework for responding to a discretionary stay request (Doc. 13 at 12). And here, Petitioner alleges that the information presented to the BIA was misleading and inaccurate and contributed to the BIA's decision to enter the discretionary stay. But it is not contested that DHS informed Petitioner's counsel of its stay request and provided them with a copy of that request. Emails to Petitioner's removal proceedings counsel reflect that he was notified and provided a copy of the motion for discretionary stay on December 28, 2017 at 3:13 p.m., and responded confirming receipt of the motion at 3:27 p.m. (Doc. 14-28 at 5-6). There is nothing in the record suggesting that Petitioner's counsel attempted to contact the BIA request an opportunity to file a response before the BIA issued the discretionary stay on December 29. Nor at any time thereafter has Petitioner filed a request for reconsideration or pointed out to the BIA that it should have the opportunity to be heard either prior to or within close temporal proximity to DHS's request for the emergency stay. Therefore, while Court has little difficulty concluding that the risk of prolonged detention is heightened when a petitioner is not provided an opportunity to respond to the government's submission, it is not clear that is what happened here.

Finally, in considering the third factor, the government alleges that exigency justifies a rapid decision on its request for discretionary stay because this detainee is wealthy and is the subject of Mexican and Interpol arrest warrants. The government thus claims, he was likely to abscond soon after he had been freed on bond and while a discretionary stay request was pending. Petitioner hotly contests these assertions of the government and even whether the likelihood of appearance is an appropriate basis on which to base a stay request. Petitioner does not dispute, however, that the BIA is the appropriate party to make these initial determinations on the merits.

What Petitioner does dispute, of course, is that he has been afforded no opportunity by the BIA to be heard in conjunction with the decision. That, however, is

far from clear. It is true that the BIA has no codified procedures in place providing set times for responses to requests for emergency discretionary stays. But, Petitioner's removal counsel was provided advance notice by the DHS of its request for discretionary stay. He could have then, and he still could now, file a motion to reopen or a motion for reconsideration of the BIA's discretionary stay. Yet, Petitioner made no attempt to contact the BIA to facilitate filing a response to the government's motion prior to the issuance of the stay.

Nor has he availed himself of any possible post-deprivation remedy, which under the circumstances may have been sufficient to provide Petitioner an opportunity to make the record clear regarding any misstatements presented in the government's request for a discretionary stay. While a pre-deprivation opportunity to respond to a request for a discretionary stay would be the best method of ensuring due process, the inquiry does not end there. Due process "is a flexible concept that varies with the particular situation." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (internal quotations omitted). The Court must therefore consider whether a post-deprivation remedy—like a motion for reconsideration or a motion to reopen—would nevertheless satisfy due process. Most cases finding due process satisfied by post-deprivation remedies are property loss cases based on the impracticability of a pre-deprivation hearing in instances of random and unauthorized official behavior in which, by definition, no pre-deprivation hearing can be provided. There are cases, however, extending post-deprivation remedies to cases involving liberty interests. *See Ellis v. Hamilton*, 669 F.2d 510, 515 (7th Cir. 1982) (seizure by county officials of adopted children not a due process violation in view of availability of various post-seizure remedies).

Based on the totality of the circumstances, and the recognition that the touchstone of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner," *City of Los Angeles*, 538 U.S. at 717, the Court finds Petitioner has not established a likelihood of success on the merits of his due process claim his motion for injunctive relief is therefore denied.

Pursuant to Federal Rule of Civil Procedure 65(a)(2), because the Petition presents a legal question that is fully briefed though the motion for injunctive relief, this Order operates as an adjudication on the merits of the Petition.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Preliminary Injunction (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is denied.

**IT IS FURTHER ORDERED** that this action is dismissed and the Clerk of Court must enter judgment accordingly.

Dated this 8th day of February, 2018.

_____
Honorable G. Murray Snow
United States District Judge